IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BRETT W. BRANCH, | * | |
| (# 36104-013) | * | |
| Petitioner | * | |
| | * | CRIMINAL NO.: 08-00327-CG |
| vs. | * | CIVIL ACTION: 11-00611-CG-B |
| | * | |
| UNITED STATES OF AMERICA, | * | |
| Respondent. | * | |

## ORDER

Pending before the Court is Brett W. Branch's Motion to Vacate, Set Aside, or

Correct Sentence under 28 U.S.C. § 2255 and supporting memorandum (Docs. 907,

913), the Government's response in opposition thereto (Doc. 914), and Branch's

reply (Doc 916).  Having carefully reviewed the record, the Court finds that

Branch's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255

(Doc. 907) is due to be DENIED, that this action is due to be DISMISSED, and that

Branch is not entitled to a certificate of appealability, and consequently, is not

entitled to appeal *in forma pauperis*.[1]

### I.    Background

On December 30, 2008, Branch and eleven co-defendants were charged in a

198-count superseding indictment (Doc. 4).  After nearly a month-long trial, the jury

---

[1] The Court has conducted a careful review of the record and finds that no
evidentiary hearing is required to resolve this case. Kelley v. Secretary for Dep't of
Corrs., 377 F.3d 1317 (11th Cir. 2004).

found Branch guilty of 46 separate counts: count 1: conspiracy to illegally dispense and distribute anabolic steroids, counts 2-37: illegally distributing anabolic steroids, counts 88-95: illegally distributing anabolic steroids to a person under the age of 21, and count 96: money laundering. (Docs. 625, 634).  Branch's sentencing was scheduled for July 7, 2010. (Doc. 634).  At the joint request of the parties, the Court rescheduled Branch's sentencing for November 3, 2010. (Doc. 726; see also Notice of Hearing between Docs. 834 and 835).

Prior to the sentencing hearing, the United States Probation office prepared a Presentence Investigation Report (hereinafter "PSR") using the 2009 edition of the United States Sentencing Guidelines. (Doc. 804).  In the PSR, Branch's base offense level was determined to be 21, based on the total quantity of anabolic steroids attributable to Branch. (Doc. 804 at 35-36, ¶ 122).  Branch was assessed a four-level enhancement for his role as an organizer/leader in the offense, which involved five or more people, and a two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1 because Branch testified falsely at trial. (Id., at 36, ¶¶ 125, 126). Branch's total offense level was calculated at 27 with a criminal history category of I, which resulted in a guideline range of 70 to 87 months. (Id., at 36-37, 43, ¶¶ 131, 134, 161).

Prior to sentencing, Branch objected to the four-level enhancement for his role as an organizer/leader and to the two-level enhancement assessed for obstruction of justice based on Branch's contention that his testimony "was substantially true." (Doc. 829).  Upon consideration of Branch's objections,

2

Probation responded that based on the testimony presented at trial, Branch was more culpable than most of the other five parties because Branch "directed the actions", "actively recruited others", and "received a large share of the fruits of the crime". (Doc. 836 at 1, ¶ 1).  Probation further responded that pursuant to Note 4 of the U.S.S.G. § 3C1.1, a two-level enhancement for obstruction of justice was justified if the Court finds that Branch's trial testimony was false. (Id., at 1, ¶ 2). At sentencing, the Court adopted the PSR. (Doc. 848 at 1).  In doing so, the Court found that Branch was properly assessed both enhancements and sentenced Branch to 87 months imprisonment, which consisted of 60 months as to each of counts 1 through 37 and 87 months as to each of counts 88 through 96, all terms to run concurrently. (Doc. 847).  Branch was also assessed a $100 special assessment fee on each of the counts for a sum on $4600. (Id.).  Branch did not appeal his conviction or sentence.

On October 18, 2011[2,3], Branch filed the instant petition seeking habeas relief citing four claims of ineffective assistance of counsel based on his counsel's 1) failure to file a motion to sever and to seek a separate trial or plea, (which Branch contends

---

[2] Under the mailbox rule, absent contrary evidence, a prisoner's motion is deemed filed on the date it is delivered to prison officials for mailing. Houston v. Lack, 487 U.S. 266, 271-72, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988); Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001); Adams v. United States, 173 F.3d 1339, 1340-41 (11th Cir. 1999).

[3] Also, on October 18, 2011, Branch filed a motion for additional time (Doc. 908) and was granted until December 2, 2012 to file his supporting memorandum (Doc. 911), which provides greater details concerning his claims (Doc. 913).

also led to his false statement enhancement), 2) failure to object to four-level

leadership enhancement, 3) failure to challenge the number of units of steroids

attributed to him[4], and 4) failure to "make it clear to the Court or to the jury

[Branch's] involvement in this alleged conspiracy." (Doc. 907 at 4-5; Doc. 913 at 10).

Branch argues that but for his counsel's ineffectiveness, "the two point

enhancement for obstruction of justice and the four points for leader/organizer

would not have stood after challenge." (Doc. 913 at 10).

The Government responded that Branch's claims are "due to be denied as

either improperly pled, factually false, procedurally defaulted, or for lack of

prejudice." (Doc. 914 at 1). Specifically, the Government contends that Branch's

challenges to his sentencing factors, including the obstruction of justice

enhancement, the leadership enhancement, and the number of units of steroids

attributed to him, and his challenge to the sufficiency of the evidence to sustain the

jury's conspiracy conviction are all procedurally barred because Branch failed to

raise these claims on direct appeal. (Id., at 7-8). The Government further contends

that Branch failed to prove either prong of the Strickland test in his ineffective

assistance of counsel claims. (Id., at 10-14). Finally, the Government contends that

Branch's claims concerning his counsel's failure to challenge his role as a

leader/organizer in the conspiracy and his membership in the conspiracy are

---

[4] According to Branch's calculations, only approximately 6,000 units of anabolic steroids should have been attributed to him (including both human and animal units), as opposed to 27,000 units. (Doc. 913 at 9).

factually false, as Branch's counsel zealously advocated for Branch at trial and filed objections to the PSR challenging Branch's designation as a leader/organizer. (Id., at 11-12, 14).

In Branch's reply, he outlines, in detail, his calculations concerning the number of units of steroids that should have been attributed to him and asserts that his counsel was ineffective when he failed to double check the Government's calculations as outlined in the chart presented at trial.[5] (Doc. 916).  He further reiterates that the obstruction of justice enhancement is unsubstantiated because he "told the truth as he knew it to be." (Id., at 2).  Finally, Branch contends that although he failed to file a direct appeal his claims are properly before this Court on collateral review.

II.   **Analysis**
   **a. Standard for Ineffective Assistance of Counsel Claims**

In Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court established a two-prong test for adjudicating ineffective assistance of counsel claims.  "A defendant claiming ineffective assistance of counsel in violation of the Sixth Amendment must demonstrate that: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the outcome of the proceedings." Windom v. Secretary, Dep't of Corrs., 578 F.3d 1227,

---

[5] Branch contends that based on his calculations, only about 2800 units of anabolic steroids should have been attributed to him, which yielded an offense level of 21 and a sentencing range of 37 to 46 months. (Doc. 916).

1248 (11th Cir. 2009) (citing Strickland, 466 U.S. at 687).  Because the failure to demonstrate either deficient performance or prejudice is dispositive of the claim, courts applying the Strickland test "are free to dispose of ineffectiveness claims on either of [Strickland's] two grounds." Oats v. Singletary, 141 F.3d 1018, 1023 (11th Cir. 1998).  "[U]nder the exacting rules and presumptions set forth in Strickland, 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" Windom, 578 F.3d at 1248 (citations omitted).

In order to satisfy the "performance" prong of the Strickland test, a petitioner is required to show that his attorney's representation "fell below an objective standard of reasonableness," which is measured by "reasonableness under prevailing professional norms." Id., 466 U.S. at 688.  That is, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., 466 U.S. at 687. In considering such a claim, the court "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." Smith v. Singletary, 170 F.3d 1051, 1053 (11th Cir. 1999) (citations omitted).

In addition, a petitioner must also satisfy the "prejudice" prong of the Strickland test.  To that end, Petitioner must show that a reasonable probability exists that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.  Petitioner "must

6

affirmatively prove prejudice because '[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.'" Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations omitted).  "[T]hat the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Id., 368 F.3d at 1293-94 (quoting Strickland, 466 U.S. at 693) (internal quotation marks omitted).

### b. Claim One: Counsel's Failure to Move for Severance

Branch's seeks habeas relief on the ground that his counsel was ineffective when he failed to move to sever his trial from the trial of his co-defendants. (Doc. 907 at 4; Doc. 913 at 3-6).  Branch argues that he was prejudiced by this error because the length of the trial and "the vast amount of evidence used against all the defendants confused the jury with a spillover of information". (Doc. 913 at 5).  He further argues that "he was not given the benefit before the jury to present his method of dispensing the anabolic steroids." (Doc. 913 at 4).  Finally, Branch contends that because he was tried jointly he was assessed a two-level enhancement for obstruction of justice for testifying falsely. (Id.).  The Government contends that Branch fails to prove deficient performance and/or prejudice in his counsel's failure to move for severance of his trial.  Further, the Government argues that because

Branch failed to file a direct appeal he is procedurally barred from challenging his sentencing factors.[6]

Federal Rule of Criminal Procedure 8 (a) allows joinder of multiple counts if they are "of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." The presumption in favor of joint trials is especially strong when the defendants are charged with conspiracy. United States v. Beale, 921 F.2d 1412, 1428 (11th Cir. 1991) ("The general rule is that defendants charged with a common conspiracy should be tried together."); Kotteakos v. United States, 328 U.S. 750, 773, 66 S. Ct. 1239, 90 L. Ed. 1557 (1946) ("[w]hen many conspire, they invite mass trial by their conduct."). However, Federal Rule of Criminal Procedure 14 provides that even properly joined defendants may obtain a severance if it appears that a defendant is prejudiced by a joinder of offenses or of defendants. In order to succeed with this claim, Petitioner must show that the joinder created "specific and compelling" prejudice that deprived him of a fair trial. United States v. Walker, 720 F.2d 1527, 1533 (11th Cir. 1983); United States v. Puig, 810 F.2d 1085, 1088-89 (11th Cir. 1987); Namur-Montalvo v. United States, 2012 U.S. Dist. LEXIS 122124, *17, 2012 WL 3758152 (N.D. Ga. August 8, 2012).

---

[6] The Government also argues that Branch's contention that he was not allowed to present to the jury his method of dispensing anabolic steroids is false. (Doc. 914 at 7). The Court agrees that this assertion is clearly belied by the record, as Branch testified at trial over two days and discussed his operation in great detail.

Apart from vague and unsupported assertions, Branch presents nothing to demonstrate that his counsel's failure to file a motion to sever was outside "the wide range of professionally competent assistance," Strickland, 466 U.S. at 690, as the decision not to seek a severance generally falls within the range of reasonable trial strategy. See, e.g., Barrientes v. Johnson, 221 F.3d 741, 775-76 (5th Cir. 2000). Here, Branch provides nothing to rebut the presumption that the decision to try him with his co-defendant was a matter of reasonable trial strategy and fails to prove either prong of the Strickland test – that his counsel's performance "fell below an objective standard of reasonableness...measured under prevailing professional norms" and that he was prejudiced as a result. Id., 466 U.S. at 688, 694.  The Court takes judicial notice[7] of its records concerning Branch's conviction and finds that counsel could have reasonably determined that Branch's arguments in support of severance were insufficient to satisfy his "heavy burden" to prove "specific and compelling prejudice" resulting from a joint trial that could not be overcome with effective jury instructions. Walker, 720 F.2d at 1533.

In support of severance, Branch cites the identical argument cited by five of his co-defendants[8] – that the vast amount of evidence presented at trial to support

---

[7] ITT Rayonier, Inc. v. United States, 651 F.2d 343, 345 n.2 (5th Cir. 1981) (The court may take judicial notice of its own records.).

[8] Five of Branch's co-defendants filed motions to sever the trial of their cases from the other defendants and four did not. (See Docs. 224, 228, 231, 254, 276, 305).  In support of their motions to sever, Branch's co-defendants argued, inter alia, that considering the vast amounts of evidence associated with each of the various

the guilt of his co-defendants prejudiced the jury against him and caused the jury to also find him guilty.[9] (Doc. 913 at 5).  When five of Branch's co-defendants presented the same argument in support of their motions to sever the Court found that curative instructions would sufficiently rectify any resulting prejudice.  In the instant motion, Branch fails to cite any novel arguments or additional evidence that if presented by counsel prior to trial, presumptively, would have altered the Court's previous analysis and resulting ruling denying the requests for severance.  Accordingly, counsel could have reasonably reached the same determination that was reached by the Court, that under the circumstances of this case, curative instructions could successfully resolve any resulting prejudice, and declined to file a meritless motion.

Moreover, Branch has not pointed to any evidence presented solely against his co-defendants that prejudiced his defense.  His assertion of prejudice based upon "spill over evidence" from his co-defendants is insufficient.  "A spillover effect, by itself, is an insufficient predicate for a motion to sever." United States v.

---

defendants a joint trial would prejudice the jury against them such that they may be found guilty by association. (Id.).  The Government filed opposition to the motions to sever (Doc. 315).  The Court ruled that curative instructions would sufficiently resolve any prejudice that may result from a joint trial; thus, the Court denied the motions, as the defendants failed to meet their heavy burdens. (Doc. 323).

[9] Branch also contends that because he was tried jointly he was assessed a penalty for testify falsely.  As discussed in more detail infra, this contention is patently false.

Bieganowski, 313 F.3d 264, 288 (5th Cir. 2002); Gonzalez v. United States, 2011

U.S. Dist. LEXIS 123453, *27-29, 2011 WL 5080343 (M.D. Fla. Oct. 25, 2011).

Because Branch has shown no basis for obtaining a severance, counsel did not

render deficient representation by failing to seek such severance.  Attorneys are

"not required by the Sixth Amendment to file meritless motions." United States v.

Gibson, 55 F.3d 173, 179 (5th Cir. 1995);  United States v. Svete, 2014 U.S. Dist.

LEXIS 31170, (N.D. Fla. Mar. 11, 2014); see Freeman v. AG, 536 F.3d 1225, 1233

(11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless

claim.").  The lack of basis for such severance, furthermore, also dictates a finding of

no prejudice from the failure to seek a severance.  Accordingly, Branch has failed to

prove that his counsel's performance was deficient or that he was prejudiced as a

result.

　　　In addition, even assuming *arguendo*, that the Court would have granted

Branch's motion to sever Branch has failed to prove that a separate trial would

have resulted in a different verdict.  At trial, Branch, his co-defendants, his ex-wife,

and some of his buyers testified and provided overwhelming evidence of Branch's

guilt, and he has failed to cite to anything in the record to indicate that he is

innocent. Thus, the Court finds no evidence that counsel's performance prejudiced

the outcome of Branch's proceedings. Strickland, 466 U.S. at 668.  Accordingly, this

issue is without merit and Branch's petition is due to be denied with respect to his

claim that his counsel failed to move for severance of his trial.

Imbedded within Branch's severance claim he also argues for the removal of the two-level enhancement assessed for obstruction of justice based on the Court's finding that he testified falsely. (Doc. 913 at 5).  The Government contends that this claim is an attack on his sentencing, which is procedurally barred because Branch did not file a direct appeal.

Under the procedural default rule, "a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011).  "A claim not raised on direct appeal is procedurally defaulted unless the petitioner can establish cause and prejudice for his failure to assert his claims on direct appeal." McCoy v. United States, 266 F.3d 1245, 1258 (11th Cir. 2001) (citing United States v. Frady, 456 U.S. 152, 167-68, 71 L. Ed. 2d 816, 102 S. Ct. 1584 (1982)).  Specifically, a petitioner must show both "(1) 'cause' excusing his...procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." Frady, 456 U.S. at 168.

It is undisputed that Branch failed to challenge the two-level enhancement for obstruction of justice on direct appeal, as Branch did not file a direct appeal. McKay, 657 F.3d at 1196 (sentencing claims of error should be challenged on direct appeal).  While Branch's procedural default can be excused if one of the two exceptions to the procedural default rule applies a searching review of Branch's filings with the Court fails to reveal any showing of cause excusing Branch's failure to present his sentencing challenge on direct appeal.  Thus, Branch's challenge to

the two-level enhancement for obstruction of justice is due to be denied as procedurally barred.

Moreover, even if the Court construes Branch's sentencing challenge as an ineffective assistance of counsel claim his challenge would still be unsuccessful, as Branch is unable to show that his counsel's performance was deficient.  As discussed <u>supra</u>, his counsel clearly objected to the obstruction of justice enhancement and urged the Court to decline the imposition of the two-point enhancement (Doc. 829).  <u>Strickland</u>, 466 U.S. at 688.  Thus, this claim is without merit.

### c. Claim Two: Counsel's Failure to Object to the Four-Level Enhancement Assessed at Sentencing for Petitioner's Role as a Leader /Organizer in the Conspiracy

Branch also seeks habeas relief on the ground that his counsel was ineffective when he failed to challenge the four-level enhancement for his role as a leader or organizer in the conspiracy.  This claim is due to be denied as factually false.  In Branch's positions regarding sentencing, Branch's counsel objected to the leadership enhancement in three separate paragraphs, and argued that Branch's adjusted and total offense level should be recalculated to equal 21 and yield a resulting guideline range of 37-46 months. (Doc. 829 at ¶ 1, 3-5).  Therefore, notwithstanding Branch's allegations to the contrary, Branch's counsel objected to the four-level enhancement assessed for his role as a leader/organizer in the conspiracy and challenged the resulting guidelines range as well.  Accordingly, Branch is not entitled to relief on this claim, as his allegations are patently false and this claim is without merit.

13

Additionally, as discussed <u>supra</u>, to the extent that Branch seeks to challenge his actual sentence (as opposed to his counsel's performance) this claim is procedurally barred. <u>McCoy</u>, 266 F.3d at 1258; <u>McKay</u>, 657 F.3d at 1196.

### d. Claim Three: Failure to Challenge the Number of Steroids Units Attributed to Petitioner

Branch complains that his trial counsel rendered ineffective assistance of counsel when he failed to contest the number of steroid units that were attributed to Branch and ultimately, calculated to determine Branch's base offense level for his sentencing guidelines range. In Branch's § 2255 motion, he contends that according to his calculations, only approximately 6,000 units of anabolic steroids should have been attributed to him (including both human and animal units), as opposed to 27,000 units. (Doc. 913 at 9). In his reply, Branch contends that based on his calculations, only about 2800 units of anabolic steroids should have been attributed to him, which would yield an offense level of 21 and a sentencing range of 37 to 46 months. (Doc. 916).

Notwithstanding Branch's allegations to the contrary, the record reflects that Branch was responsible for distributing 27,190 dosage units of anabolic steroids to humans. IRS-CID Special Agent Craig Underwood calculated the dosage units for which Branch was held responsible by using the records seized from Branch's former employer, Applied Pharmacy, which were admitted into evidence at trial. A 29-page chart – detailing the date, prescription number, customer name, specific drug, quantity, price, and dosage unit for each prescription submitted by Branch's

14

customers – was provided to Branch's counsel, the Court, and Federal Probation prior to sentencing. The chart outlines that Branch was held responsible 27,190 dosage units to humans only. As stated, the records supporting the dosage unit calculations were seized from Branch's former employer, Applied Pharmacy ("Applied"); thus, Branch possibly aided in the creation of some of the records, presumptively had the opportunity to review the records when presented to his counsel during discovery prior to trial, and undoubtedly viewed the records when presented as evidence in trial. After all of the opportunities Branch had to review Applied's records, for the first time, on collateral review, Branch challenges the dosage units attributed to him, which are based on Applied's records; however, throughout the pretrial, trial, and sentencing phases of his case Branch never challenged the authenticity or accuracy of Applied's records, nor did Branch advance such challenges on direct appeal. Moreover, even in the instant § 2255 petition, Branch fails to challenge the authenticity or accuracy of Applied's records that support the dosage unit calculations. Rather, Branch, relying on the IRS records, engages in very questionable[10] mathematical equations to calculate the

_____

[10] Branch's mathematical equation begins with his income from the steroid sales based on IRS records, which was $67,282.38. (Doc. 913 at 8). Branch contends that he was compensated at a rate of 25%; thus, the actual sales of steroids for which he was involved equaled $269,129.52. (Id., at 8-9). Branch then elected to "proceed with his own calculations [because he] d[id] not have the actual calculations used by the government." (Id., at 9). Thus, Branch explained that the cost per unit ranged from $25 - $95 and that although an average cost per unit would equal $60, he calculated his responsibility based on $45 per unit cost. (Id.). Branch contends that

dosage units for which he should have been responsible.  In his § 2255 memorandum, Branch calculates that his responsibility should equal nearly 6,000 dosage units (Doc. 913 at 9) and in his reply, he calculates that he should be responsible for only 2,800 units (Doc. 916).

Notwithstanding Branch's questionable mathematical calculations, Branch has cited to nothing in the record to challenge Applied's records detailing his customer's steroid purchases, nor has Branch pointed to anything in the record that his counsel should have relied upon to substantively challenge the amount of steroids attributed to him.  Given that the 27,000 dosage units for which Branch was held responsible were calculated based on records entered into evidence which had been seized from Branch's former employer, Applied Pharmacy, and Branch has failed to challenge the authenticity or accuracy of those records, counsel was not deficient in failing to object to the calculations.  Freeman, 536 F.3d at 1233 (an attorney is not required to file a meritless claim).  Thus, Branch is not entitled to relief on this claim, as this claim is without merit.

### e. Claim Four: Failure to Contest Petitioner's Membership in the Conspiracy

Branch seeks habeas relief on the ground that his counsel was ineffective for failing to contest his membership in the conspiracy to distribute anabolic steroids. In support of this claim, Branch argues that he "was sentenced as a member of a

_____

his calculations yielded that he was responsible for distributing 5,981 units of anabolic steroids, which included both human and animal sales.

conspiracy, yet he did not meet the criteria." (Doc. 913 at 9).  Branch contends that the alleged conspiracy involved three parties, which included the doctor who signed the prescriptions, the pharmacy that shipped the anabolic steroids, and Branch. (Id.).  According to Branch, he is the only member of the three parties to the conspiracy "who could have been removed…and the anabolic steroids still would have been sold with just the doctor signing the prescriptions and the phamacy (sic) filling them." (Id.).  Essentially, Branch argues that because he was not an indispensible party to the conspiracy then he was not a member of the conspiracy. Branch is not entitled to relief on this claim because 1) Branch is procedurally barred from raising this claim on collateral review and 2) this claim is without merit.

Although cloaked as an ineffective assistance of counsel claim, this claim substantively challenges the sufficiency of the evidence supporting count one of the superseding indictment, conspiracy to distribute anabolic steroids in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2, of which the jury found Branch guilty.  As discussed above, because Branch failed to file a direct appeal he is procedurally barred from presenting this claim on collateral review unless he can show both "(1) 'cause' excusing his…procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." Frady, 456 U.S. at 168.  A searching review of Branch's filings with the Court fails to reveal any showing of cause excusing his failure to present his challenge to the sufficiency of the evidence on direct appeal; thus, this claim is due to be denied as procedurally barred.

17

Moreover, even if the Court construes Branch's challenge as an ineffective assistance of counsel claim, Branch would fare no better, as he fails to demonstrate that counsel's performance was deficient or that he suffered prejudice as a result. As an initial observation, the Court notes that Branch's counsel advocated zealously on Branch's behalf throughout all of the phases of the his prosecution, and counsel continuously challenged Branch's culpability for both the conspiracy charge and the distribution charges. Specifically, Branch's counsel filed a motion to dismiss counts 1-95 as unconstitutionally void or vague based on the premise that as a layperson – not a physician or pharmacist –, Branch should not be held to professional standards, as he did not understand the charges against him, namely that he was participating in a conspiracy to dispense anabolic steroids "outside of the course of professional practice and not for legitimate medical purposes." (Doc. 230). Also, counsel filed a motion to dismiss count 96 charging a violation of conspiracy to commit money laundering on the basis that the grand jury was not properly instructed as to what constituted narcotics proceeds. (Doc. 252). Further, counsel moved for judgment of acquittal, arguing that the Government's evidence was insufficient to prove that Branch was a member of the conspiracy.[11] (Doc. 589).

_____

[11] Additionally, counsel filed several other motions on Branch's behalf including, a motion in limine to prohibit Branch's ex-wife from testifying about, inter alia, Branch injecting his children with steroids, his prior steroid usage, his previous steroid purchases from Mexico, the history of drug abuse in his family, and his guilty plea to assault in 1997 (Doc. 424), a motion to suppress information gathered through wire transfers (Doc. 263), and a motion to strike prejudicial surplusage in

Despite counsel's zealous efforts, the jury found Branch guilty of conspiracy beyond a reasonable doubt.  To convict Branch of "conspiracy to possess with intent to distribute, under 21 U.S.C. § 846, the government had to prove beyond a reasonable doubt that (1) an agreement existed between two or more persons to commit a crime and (2) the defendant knowingly and voluntarily joined or participated in the conspiracy." United States v. Delgado, 56 F.3d 1357, 1367 (11th Cir. 1995) (citations omitted).  Here, Branch testified that he knowingly and voluntarily advertised the anabolic steroids, filled out the prescription forms, forwarded the prescription forms to the doctors for signatures, and followed up with the purchasers, and he received 25% commission for each sale of the anabolic steroids to his customers. (Doc. 33).  When presented these facts, the jury reasonably found Branch guilty of conspiracy.  Despite the jury's verdict, which is supported by the evidence adduced at trial, Branch contends that he was not a member of the conspiracy solely because the conspiracy could have continued without his participation – with the doctor writing prescriptions and the pharmacy filling those prescriptions.  However, the fact that Branch's participation may not have been required to sustain the conspiracy has no bearing on his culpability for his role in the conspiracy, as whether a party is an indispensible member of a

---

the indictment (Doc. 261), upon which counsel successfully had the prejudicial language "steroid user" stricken from the record.

conspiracy is not an element of the crime of conspiracy. Delgado, 56 F.3d at 1367.
Thus, Branch's claim is without merit and he is not entitled to relief on this claim.

### III.   Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2255 Cases, the undersigned
finds that a certificate of appealability in this case is due to be denied. 28 U.S.C.
foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of
appealability when it enters a final order adverse to the applicant.").  The habeas
corpus statute makes clear that an applicant is entitled to appeal a district court's
denial of his habeas corpus petition only where a circuit justice or judge issues a
certificate of appealability. 28 U.S.C. § 2253(c)(1).  Where a habeas petition is
denied on the merits of an underlying constitutional claim, a certificate of
appealability should issue only when the petitioner demonstrates "that reasonable
jurists would find the district court's assessment of the constitutional claims
debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604
146 L. Ed. 2d 542 (2000) ("To obtain a COA under § 2253(c), a habeas prisoner must
make a substantial showing of the denial of a constitutional right, a demonstration
that, under Barefoot [v. Estelle, 463 U.S. 880, 893, 103 S. Ct. 3383, 3394, 77 L. Ed.
2d 1090,   (1983)], includes showing that reasonable jurists could debate whether
(or, for that matter, agree that) the petition should have been resolved in a different
manner or that the issues presented were adequate to deserve encouragement to
proceed further.") (internal quotation marks omitted); accord Miller-El v. Cockrell,
537 U.S. 322, 336, 123 S. Ct. 1029, 1039, 154 L. Ed. 2d 931 (2003).

For the reasons discussed above with respect to Branch's claims, reasonable jurists could not debate whether his claims should be resolved in a different manner or was adequate to deserve encouragement to proceed further on the merits as his contentions are clearly contradicted by the record.  The denial of Branch's claims is based on the straightforward application of clear Circuit precedent, and no reasonable jurist could differ on the appropriate disposition of his claims on the record presented.  It is thus ORDERED any request by Branch for a Certificate of Appealability is DENIED.  Because Branch is not entitled to a Certificate of Appealability, any request for leave to appeal *in forma pauperis* is likewise DENIED.

IV.    **Conclusion**

For the foregoing reasons, Branch's § 2255 Motion to Vacate, Set Aside, or Correct Sentence is DENIED, this action is DISMISSED, and judgment is entered in favor of Respondent, the United States of America, and against Petitioner, Brett W. Branch.  In addition, Branch is not entitled to issuance of a Certificate of Appealability; thus, is not entitled to appeal *in forma pauperis*.

**DONE** and **ORDERED** this 10th day of March, 2015.

/s/  Callie V. S. Granade
UNITED STATES DISTRICT JUDGE